## Billmeyer *versus* Evans & Rodenbaugh.

*Stay Laws, when Unconstitutional.—Act of May* 21st 1861 *construed.*

1. The proviso of the first section of the Act 21st May 1861, granting stay of execution, under certain conditions, on "all judgments or debts upon which stay of execution has been or may be waived by the debtor in any original obligation or contract upon which such judgment has been or may hereafter be obtained," is unconstitutional, being in conflict with Section 10, Art. I., of the Constitution of the United States, and with Section 17, Article IX., of the Constitution of Pennsylvania.

2. Where the defendants, on the 12th July 1860, signed a sealed bill authorizing the entry of judgment against them for $1000, payable twelve months after date, "*without stay of execution after the day of payment,*" the release of their statutory right to a further stay became a part of the contract, and as such, could not be impaired or altered by the legislature; therefore, where the Court of Common Pleas, after the day of payment, granted an additional stay of execution under the Act 21st May 1861, it was error.

3. If the parties to a contract include in it the legal remedy by which it is to be enforced, a legislative enactment changing the remedial process agreed on in regard to that contract, is as clearly unconstitutional as the attempt to impair the obligation of any other contract.

ERROR to the Common Pleas of *Union county.*

This was a decree of the court below, ordering and directing a stay of execution on a judgment against Thompson G. Evans and Jacob Rodenbaugh, in favour of Susan Billmeyer. The case was this :—

On the 12th of July 1860, Thompson G. Evans and Jacob Rodenbaugh executed a judgment, single bill, for $1000, payable to the order of Mrs. Susan Billmeyer, twelve months after date, with interest and costs, in which was contained this clause, "*and without stay of execution after date of payment.*" Judgment was entered thereon in the Common Pleas of Union county on the 14th of July 1860. On the 17th of August 1861, defendants made application to Hon. John Walls, one of the associate judges, for stay of execution on said judgment, under the provisions of the Act of 21st May 1861, entitled "An Act relating to judg-

[Billmeyer v. Evans & Rodenbaugh.]

ments and executions," who appointed the 20th of same month for a hearing, and then postponed the matter until the first day of the regular term of court, which was on the 16th of September. On that day the parties attended, and the application for stay of execution was resisted by the plaintiff. The court being satisfied that the defendants were possessed of real estate within said county of Union, worth at a fair valuation a sum more than sufficient to pay or satisfy said judgment, together with interest and costs, over and above other encumbrances, and the amount exempted from levy and sale on execution, directed a stay of execution on the judgment for one year from the 21st of May 1861; whereupon the plaintiff sued out this writ, and assigned for error the following matters, to wit :—

1. The court below erred in granting the prayer of the petitioners.

2. In granting the prayer of the petition, because the *contract* of the parties was an *especial waiver* of stay of execution after day of payment; and,

3. In granting the prayer of the petition, because the clause of the Act of Assembly, approved May 21st 1861, extending the stay of execution, in these words, "To all judgments or debts upon which stay of execution has been or may be waived by the debtor in any original *obligation* or *contract* upon which such judgment has been or may hereafter be obtained, or by any stipulation entered into at any time separate from said obligation or contract," is unconstitutional in its application to the contract of the parties in this case.

*Vangezer* and *Dill*, for plaintiffs in error, argued that the waiver of the stay of execution was a constituent element of the contract between the parties, which the legislature were prohibited from impairing, by Art. 1, § 10, of the Constitution of the United States, and Art. 1, § 17, of the Constitution of Pennsylvania: citing McKinny v. Reeder, 6 Watts 34; Chadwick v. Moore, 8 W. & S. 49; Bronson v. Kinzel, 1 How. 311; McCracken v. Hayward, 2 Id. 605; 1 Kent's Com. 466.

*G. F. Miller* and *Wm. Cameron, Jr.*, for defendants in error. —The judgment, single bill, which was "without stay of execution after day of payment," was not due at the passage of the stay law of 1861, and did not fall due until July 12th, 1861. If this clause had been omitted no one pretends that defendants would not be entitled to a stay under the Act of 1861, or under the Act of June 16th 1836. How can the insertion of this clause change the case? Laws suspending execution have often been sustained as constitutional: Chadwick v. Moore, 8 W. & S. 49; 3 Peters's Rep. 290; Taggert v. McGinn, 2 Harris 157;

[Billmeyer *v.* Evans & Rodenbaugh.]

Evans *v.* Montgomery, 4 W. & S. 218; Barnet *v.* Barnet, 15 S. & R. 72; Mercer *v.* Watson, 1 Watts 356; Schenley *v.* Allegheny City, 1 Casey 128; E. & N. E. Railroad *v.* Casey, 2 Id. 300. The Act of 1861 makes the plaintiff amply secure, and does not impair the obligation of the contract. It operates on the remedy by giving the debtor a little more time, while it secures the creditor.

The opinion of the court was delivered, November 27th 1861, by Woodward, J.—When the defendants became the debtors of the plaintiff in $1000, the law of Pennsylvania entitled them, if freeholders, to a stay of execution, for one year, on any judgment that should be entered against them, to be computed from the first day of the term at which the suit may have been commenced. But when, on the 12th day of July 1860, they signed a sealed bill, they authorized judgment to be entered against themselves for "the aforesaid sum with interest, costs of suit, release of errors, and *without stay of execution after the day of payment.*"

This was an express release or waiver, on sufficient consideration, of a personal, statutory privilege of the debtors. Without it the law would, of itself, have entered into and formed part of the contract, entitling them to a year's credit additional to the twelve months stipulated for on the face of the paper, and vesting the right in them as absolutely as it gave to the plaintiff the right to enforce the contract after such a stay. Because it was a personal right of the defendants they might release it, and having done so in terms, we regard the release as part of the obligation of the contract. The obligation of a contract consists of its binding force on the party who makes it. The defendants bound themselves to pay, twelve months after date of the sealed bill, without stay of execution. The stipulation for interest and costs was no more an obliging portion of the contract than this waiver of stay of execution. It was not merely a waiver of such stay as is given by the Act of 1836, or any other particular statute, but a simple, general waiver of *all* stay beyond the day of payment.

Such being the obligation of the contract when it was consummated, the question on the record is, whether the legislature could alter and impair it subsequently. The Act of 21st May 1861, entitled debtors to a year's stay of execution on certain conditions, and the proviso to the 1st section declares that the provisions of the act "*shall extend to all judgments, or debts upon which stay of execution has been or may be waived by the debtor in any original obligation or contract upon which such judgment has been or may hereafter be obtained, or by any stipulation entered into at any time separate from aid obligation or contract.*"

[Billmeyer v. Evans & Rodenbaugh.]

This is a legislative imposition of a stay upon a contract, wherein the parties agreed there should be none. Is this clause of the act constitutional? Whilst the courts of this country, both state and federal, have expressed high regard for those constitutional provisions which forbid states to pass any law impairing the obligation of contracts, a distinction has obtained between the *obligation* of the contract and the *remedy* given by the legislature to enforce the obligation. In Sturgis v. Crownshield, 4 Wh. 200, it was said that the distinction exists in nature, and that without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the legislature may direct.

The argument here, in favour of the constitutionality of the act under consideration, rests altogether on this distinction. The Act of 1861 is said to be merely a modification of the plaintiff's legal remedies. But a statute strictly remedial may impair the obligation of a contract, and when this happens the act is unconstitutional: Bronson v. Kenzie, 1 How. 322. This always happens where the parties make legal remedies a subject of their contract, and subsequent legislation conflicts with what they have expressed in their agreement. If they do not prescribe the rule of remedy in their contract, the law-making power is free; but if they do, they become a law to themselves, and the legislature must let them alone. Stay laws, exemption laws, and limitation laws are ordinarily constitutional, though applied to existing and prior contracts, but the cases in which such laws have been sustained have been cases in which the parties have not contracted about the subject-matter to which the laws were applicable. All remedies on contracts come from the legislature. Courts and juries, the attendance of witnesses, legal process, and the administration of justice are all under legislative care and discretion; and when, in the exercise of a sound discretion, the legislature suspends the collection of debts for a time not unreasonable, the law, though retroactive, is constitutional in respect of all contracts which do not forbid such suspension to the immediate parties: Chadwick v. Moore, 8 W. & S. 50. If the suspension be perpetual on condition the creditor do not accept the debtor's property at a valuation, the law is unconstitutional: McCracken v. Hayward, 2 How. 608. But if the thing provided for by the legislature be within their general competence, and yet be the very thing expressly excluded by a particular contract, it is plain that, as to the parties to that contract, the law is unconstitutional and void, because it impairs the obligation of their contract. Nor do you rescue the law from this consequence by calling it remedial. The legislature can no more overthrow the lawful contracts of parties, under guise of remedial legislation, than by direct assault. They can pass *no* law that impairs the

[Billmeyer *v*. Evans & Rodenbaugh.]

obligation of contracts. Exemption statutes illustrate this whole subject. What portion of a man's property shall be liable for his debts and what shall be exempt is a fair subject of legislative discretion. Manifestly exemption statutes are regulations of the creditor's remedies against the debtor's property. They are, therefore, constitutional. But in a particular contract the debtor stipulates that he will have no exemption, and devotes all of his property to the payment of his debts. Now, whilst he cannot repeal the law by his agreement, he can refuse its favours. His contract is lawful and binding. His waiver of legal rights has become parcel of the obligation of his contract, and the legislature can no more impair that obligation than they can annul the entire contract.

So when these defendants stipulated for twelve months' credit, and agreed that there should be no stay of execution beyond that limit, can the legislature say there *shall* be a stay beyond that limit without impairing the obligation of the contract? How would it be possible more directly to impair a contract? What is it but setting aside the contract made by the parties and substituting a different one for it? To say that a contract which waives a stay of execution is not impaired by a law which gives a stay, is to talk language which is unintelligible. If the legislature may do this, the constitutional provisions are a vain parade of words, a mere theoretical rule without any practical force or value.

Our opinion is that the clause of the act above quoted is in conflict with § 10, Art. 1, of the Constitution of the United States, and with § 17, Art. 9, of the Constitution of Pennsylvania, and, that it is, therefore, null and void.

The decree is set aside and annulled.