GAUCHE and another, Syndics, v. LONDON & LANCASHIRE INS. Co.*

*(Circuit Court, E. D. Louisiana. December 19, 1881.)*

1. INSURANCE—PRELIMINARY PROOFS—ARBITRATION.

The conditions in a policy of insurance requiring preliminary proofs, and a reference to arbitration in case of difference, are conditions precedent to suit upon the policy.

2. SAME—DELAY FOR PAYMENT AFTER PRELIMINARY PROOFS.

The clause providing that "payment of any loss or damage shall be made within 60 days after satisfactory proof thereof shall have been made to the company," means that suit cannot be maintained until 60 days after delivery of preliminary proofs, which are or should be accepted as satisfactory; and a suit commenced before the expiration of said 60 days is premature, and the commencement of a suit is the issuance of process, not its service upon defendant.

3. SAME—EXAMINATION OF INSURED.

An examination of the insured under oath is consistent with a demand for proper preliminary proofs.

4. SAME—WAIVER OF DEFECTS IN PRELIMINARY PROOFS.

The insurer who rejects as defective preliminary proofs without specifying the defects, but refers the insured to the condition of the policy which defines what they must contain, with a notice that he insists upon an exact compliance with that condition, waives no right to urge the defects in such proofs.

5. SAME—SAME.

The policy requiring the insured to furnish as particular an account as the nature of the case will admit of, will not be complied with by a statement in which there is not even an attempt made to enumerate the articles lost, or to give their kind or value; and a reference to the books and invoices of the insured, even when they had been in the possession of the insurer after the loss, will not be sufficient, as it is the duty of the insured to make out the particular statement.

6. SAME—ARBITRATION CLAUSE.

The arbitration clause, which requires the award of arbitrators as to the amount of damages, is a valid contract, and a compliance or attempted compliance with it is a condition precedent to suit.

7. SAME—SUFFICIENCY OF PRELIMINARY PROOFS.

The sufficiency of preliminary proofs, there being no question of waiver involved, is a question of law for the court, and not a question of fact for the jury.

*Joseph P. Hornor, Francis W. Baker, George H. Braughn, Charles F. Buck, Max Dinkelspiel, L. L. Levy,* and *Benjamin C. Elliott,* for plaintiffs.

*John A. Campbell, Edward W. Huntington, Francis T. Nicholls, Charles Carroll,* and *Charles E. Schmidt,* for defendants.

BILLINGS, D. J. This is an action upon a policy of insurance against loss by fire. The defendant pleaded special pleas, or, as

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

under our Code of Practice they would be termed, dilatory exceptions, along with the plea to the merits. These pleas are to the effect that the conditions precedent established by the policy have not been performed: (1) In that no proper preliminary proofs were furnished; and (2) that there had been no arbitration whereby the "amount of loss" must be determined, and that until these conditions have been performed no right of action in the plaintiff exists. The court ruled that the plaintiffs, having alleged performance by furnishing preliminary proofs, were confined to evidence in support of that allegation, unless they elected to amend and plead a waiver of that obligation; and the plaintiffs elected to stand upon the allegation that preliminary proofs were furnished. Under rule 3 of this court these special or dilatory pleas were first tried, and when the evidence on the part of the plaintiffs was finished, defendants' counsel asked the court to exclude the testimony from the consideration of the jury as being insufficient to show the delivery of preliminary proofs or any arbitration and award. The policy of insurance offered in evidence by the plaintiffs contains certain provisions which are declared therein to be conditions with reference to the preliminary proofs, and with reference to arbitration. These provisions are held to be conditions precedent by an unbroken line of authorities. Unless they are against the policy of the law, or have been waived, they must be proved to have been performed as stipulated, for they are the law of the case established by the parties themselves.

1. First, as to the preliminary proofs. The stipulations on this subject are as follows:

No. 8. "All persons insured by this company, sustaining any loss or damage by fire, shall immediately give notice to the company or their agents, and within 14 days after such loss or damage has occurred shall deliver in as particular an account of their loss or damage as the nature of the case will admit of, and make proof of the same by their declaration or affirmation, and by their books of account, or such other proper evidence as the directors of this company or their agents may reasonably require; and until such declaration or affirmation, ac count and evidence be produced, the amount of such loss, or any part thereof, shall not be payable or recoverable."

And—

No. 10. "Payment of any loss or damage shall be made within 60 days after satisfactory proof thereof shall have been made to the company in accordance with the condition's of this policy, and in every case of loss the company will reserve to itself the right of reinstatement, in preference to the payment of claims, if it shall judge the former course to be most expedient."

These provisions are cumulative, and are to be construed together. Their meaning is that the assured's right of action shall not be exercised until there has taken place both the delivery of satisfactory proofs and the passage of 60 days thereafter. The assured, therefore, can in no case maintain an action until 60 days after he has rendered preliminary proofs, which either are *to be deemed* satisfactory because they are accepted by the insurers, or *are* satisfactory, whether accepted or rejected by the insurers, because they perform the promise contained in the contract.

The fire and loss occurred on January 1st.

Four papers, or sets of papers, were furnished to the defendants on behalf of the insured, as preliminary proofs, as follows: The first within a week after the fire; the second on January 24th; the third on February 11th; and the fourth on February 28th.

In response to the first proffer an oral statement was made that it was unsatisfactory. To the second a reply was given in writing that the papers were insufficient, and they added: "We notify you for your guidance that only such papers as comply in every respect with section No. 10 of the printed conditions of our policy can be accepted by us as proper proofs of said loss." To the third set of papers a written reply was given, returning them and repeating the substance of the second reply, but more fully expressed. To the fourth the written reply was given as follows: "We return the enclosed papers, purporting to be proofs of loss, which are incomplete and unsatisfactory."

It was proved that the insured were, during the time occupied by their successive offers of proofs, examined under oath at the instance of the defendants; that the following paper was executed by the insured on the one part, and by those who represented the defendants and the other insurers on the other part:

*State of Louisiana, Parish of Orleans:* This agreement, made on the thirteenth day of January, 1881, between Messrs. Isidore Levy & Co., of the first part, and the several insurance companies interested in their loss by fire January 1, 1881, of the second part, mutually agree that the merchandise saved from the front store, No. 24 Magazine street, has the present value of $1,000; the condition of the stock being in such a condition that it is impossible to determine the first cost of the same.

[Signed]                                   ISIDORE LEVY & Co.,
                                                 By Isidore Levy.
                                  J. W. COVINGTON,
                                  C. N. WELCHANS,
                        Committee for insurance company at interest.

—And that the damaged goods were subsequently taken by the insured The examination of the insured was entirely consistent with the demand for proper preliminary proofs. See *Columbian Ins. Co.* v. *Lawrence*, 2 Pet. 53. The court there say:

"Did the examination of the title, and the proceedings of the board respecting it, presuppose an examination of the preliminary proofs and an acquiescence in its sufficiency? We think not. The proof of interest, and the certificate which was to precede payment if the claim should be admitted, are distinct parts of the case to be made out by the assured. Neither of those parts depends on the other. The one or the other may be first considered without violating propriety or convenience. The consideration of the one does not imply a previous consideration and approval of the other. The language of the ninth rule does not imply that the proof it requires is first in order for consideration. After stating what shall be done by the assured, the rule requires the affidavit and certificate in question, and adds that until such affidavit and certificate are produced, the loss claimed shall not be payable. The affidavit and certificate must precede the payment, but need not precede the consideration of the claim."

The agreement that the value of the damaged and saved goods should be fixed at $1,000, had no tendency—no direction—towards waiver. In fact, it rendered a full enumeration of the lost articles all the more necessary, as in case the defendants had elected to reinstate the plaintiffs would have been debtors to them in that sum.

It was also urged by counsel for plaintiffs that so complete had been the proofs that the general objection of the defendants worked a waiver as being utterly groundless. I cannot assent to that reasoning. If one party to a contract insists it has not been performed, even if he be perverse and altogether unsupported by reason or law, the answer to his demand for performance could never be that by unreasonable exaction he had waived any right, but he could be answered only by showing complete performance of the contract. It is not contended that there was any express waiver, nor has there been any evidence introduced tending to show an implied waiver. The doctrine upon which waivers of this clause have been implied is that of good faith, that neither by silence, nor by putting the refusal to pay upon grounds which seemingly admit or dispense with preliminary proofs shall the insurer mislead the assured into a belief that his proofs are proper, and afterwards be allowed to absolve himself from liability by showing defects in those proofs. This doctrine is not only the doctrine of the law: it is that of morals and of integrity. But it has no application to a case where, as here, from first to last, the insurer gave notice to the assured that with respect to proofs the

terms of the stipulation must be exactly complied with. It can never be held that denial, even if it were excessive, amounts to affirmation. There is no evidence on this subject except that of constant, uniform, unwavering demand on the part of the defendants of an unrelaxed performance of this part of the contract. The law on this point is laid down with explicitness in *Kimball* v. *Hamilton Fire Ins. Co.* 8 Bosw. 503. The court there say:

"Silence when they (preliminary proofs) are furnished, especially if accompanied with the plain assertion of a distinct ground of defence, or a general denial of their liability, will ordinarily amount to a waiver. And we see that the reason of this is the tendency to mislead the claimants. But I have not found a case—I doubt if any is to be found—holding that the assurer who apprises the assured that his papers are no proofs, and refers him to the policy, is bound to go further and specify the particular defects. No case has decided that if he apprises the insured that he will rely on the defect of proofs he waives this objection by taking others which he insists will defeat the recovery."

In *Lycoming County Ins. Co* v. *Updegraff*, 40 Pa. 324, the court say:

"They (the insured) were given to understand that a particular statement was necessary. How it can be claimed they were released from the obligation to furnish it, we cannot discover."

The question then is, did the plaintiffs furnish the proofs called for by the terms of the policy?

The fourth set of documents could not be a basis for this suit. They were furnished not earlier than February 28th. This suit was instituted on April 25th. Sixty days must elapse, and there had elapsed only 56. It is urged that though the petition was filed on April 25th, citation was not served till the thirtieth of that month. So far as interruption of prescription is concerned the time dates from service of petition, because it is in that case treated by the statute as a question of time of notice to the defendant. But when, as here, the court is called upon to enforce an agreement of the parties that suit shall not be brought, the commencement of the suit is the issuance of the writ, (here the citation,) and the pleas and judgment have relation to that time alone. See Bouv. Law Dict. *verbis*, Commencement of Suit," and the authorities there cited.

The fourth set of papers, therefore, need not be considered. The question here is, then: Were either of the first three papers or sets of papers, or all together, sufficient preliminary proof of loss within the meaning of the terms of the stipulations of this policy? The

insurance is "on stock consisting of china, glass, wood ,and willow ware, and general house-furnishing goods." The statement is to be as particular an account of their loss or damage as the nature of the case will admit of, and the company in every case reserves the right of the reinstatement, i. e., of the substitution, of new articles in place of those destroyed.,

The first paper, that of January 24th, is without affidavit or even signature, and consists of a reference to the books of the assured under the items of stock as per inventory, various "invoices, sundries, cash, and suspense," with an added total of $95,928, from which are deducted total sales, profits, amount duties paid, the amount of 10 invoices and traveling expense charged to merchandise, making in all the sum of deductions to be $39,778.19, leaving a balance of $56,-149.82.

The second and third papers add nothing to the statement by way of particularity. The addition being an affidavit, a statement that all the books of the insured were in possession of defendants for two weeks after the fire, and the statement that some $4,600 worth of goods were in other warehouses and insured by the La Confiance Insurance Company, and concludes the Statement B, "annexed to our proof of loss (the first paper as above designated) contains a complete list of our stocks taken from our books, and is true and correct." And the second paper, that of the twenty-fourth of January, says the "insured claim as follows: On stock consisting of china, glass, wood, and willow ware, and general house-furnishing goods, contained in three-story brick slated building aforesaid."

The question, then, is not whether the insured are exempted by destruction of sources of information from compliance with the stipulation to furnish a particular statement, but whether this is in itself a particular statement of the loss or damage to a company who are by the terms of the policy to have 60 days to reinstate, and by insured parties who have offered no evidence tending to show that they did not have unimpaired all of the appliances of wholesale dealers—such as books, invoices, and letters, from which to make a proper statement. It is to be observed that the statement never approaches detail, does not deal in a single particular as to kind or enumeration, and if it gives even the slightest notion of value, does it only by reference to the books and invoices in their own possession. The question is directed in this case to this statement free from all extrinsic matters, and the court is called upon to say whether this is a particular statement. I feel bound to say that it is in no sense a particular

statement. It has not one element of such a statement. A particular statement should give accurately, if possible, or, if not possible, approximately, the *kind* and *value* of the articles lost. *Catlin* v. *Springfield Ins. Co.* 1 Sumn. 437.

It should also be at least an effort to enumerate. It should be in its aim of such a circumstantial character as to afford detailed, itemized information of the extent of the loss. All this is wanting. It gives the stock on hand in May, adds the invoices in gross, deducts the sales and profits, and presents the result in bulk, so to speak, as the sole means of arriving at the loss. It gives no weight, no measurement, no reckoning, no description, however general. This is no *particular account.* It is rather *an estimate without particulars.* Instead of enabling verification it would defy it. Instead of furnishing opportunity to substitute, it gives not even the most vague description. Precisely this manner of statement was condemned as being not a particular account, first by the common pleas court by the court, and, on appeal, by the supreme court, in *Lycoming Ins. Co.* v. *Updegraff,* 40 Pa. St. 311. The court there said, (p. 323:) "We agree with the learned judge of the common pleas, that the paper which was furnished was not such a particular account of the loss as was required by the policy." The case is not varied by the fact that the insurers had had possession of the books containing the inventory and invoices to which reference was made. It was, nevertheless, the duty of the assured to carry on the process of searching for and finding the elements of a particular account in their own books, and they could not thus cast it upon the insurers. I do not mean to say that accounts no more particular than this have not been accepted by courts as sufficient, but it has been where the acts of the underwriters constituted a waiver, or where the fire which occasioned the loss also destroyed all means of identifying and describing the things destroyed. But where, as here, there is an absence of all evidence of estoppel on the part of the defendants, and of inability on the part of the insured, I know of no case which holds such a statement as was presented in this case to be a compliance with the stipulation to furnish a "particular account."

2. Is the question here presented one for the court or the jury? The answer depends upon whether the question be one of law or fact. If there had been evidence tending to show waiver of preliminary proofs, that would have been for the jury. If there had been evidence tending to show destruction of books, so that there could be no com-

pliance with the stipulation requiring proofs, that would have been for the jury. In all the cases where courts have held that the sufficiency of preliminary proofs must go to the jury there has been either the question of defective ones having been rendered sufficient ones because of waiver, or because of destruction of books or other inability to furnish proper proofs from some cause beyond the control of the assured. In those cases the question reaches out to matters extrinsic to the papers themselves, claimed as constituting proofs, and the question of sufficiency is for the jury. But this case finds neither evidence tending to establish waiver, nor destruction of books nor other cause of inability. It presents simply the question whether, intrinsically judged, in and of themselves, the papers submitted constituted proofs. The decisions of the supreme court of the United States and of the supreme courts of the states have with well nigh unanimity defined with exactitude the principle which separates questions of law from questions of fact. The question which presents the closest analogy to the one before the court is, what constitutes due · diligence in giving notice to an indorser of a promissory note of non-payment? and a long line of concurrent decisions has established the law as being that when the facts are undisputed what is due diligence is a question for the court. In the cases collated—1 Brightly's Dig. *verbo,* "Jury 7," (*a,*) No. 102, p. 511—it is also held that when the facts are admitted or established, the question as to what is a reasonable time for the production of preliminary proofs is for the court. *Columbia Ins. Co.* v. *Lawrence,* 10 Pet. 507-513.

In the cases where, as here, nothing was before the court except the measurement of the papers proffered as preliminary proofs by the requirements of the contract—no extrinsic question—the court has uniformly determined as to the sufficiency of proofs. Justice Story did this in *Catlin* v. *Springfield Ins. Co.* 1 Summ. 437; *Lycoming Ins. Co.* v. *Updegraff,* 4 Wright, (Pa.) 311; *Beatty* v. *Lycoming Ins. Co.* 66 Pa. St. 17; *Wellcome* v. *People's Equitable Fire Ins. Co.* 2 Gray, (Mass.) 480; *Norton* v. *Rensselaer & S. Ins. Co.* 7 Cow. 645; and *Kimball* v. *Hamilton Fire Ins. Co. supra;* 8 Bos. 503. As to the question whether the 60 days had elapsed since the service of the last set of papers, and before the institution of this suit, see ruling of Judge Duer. 7 Cow. 647. From an examination of the cases cited, and of all the cases I could consult, I am of the opinion that the question here presented is for the court to respond to, and the court declares that there had not been preliminary proofs furnished

according to the conditions of the policy sued on 60 days prior to the commencement of this suit.

3. The third special plea of the defendant is to the effect that it was a part of the contract of insurance, made a condition precedent to the right to maintain an action thereon, that in case of difference between the parties there should be an arbitration and award as to amount of loss or damage; that there was a difference; that there has been no arbitration or award; and avers willingness at all times on the part of defendants to submit the amount of loss or damage to arbitration.

The stipulations as to award are as follows:

(11) "If any difference shall arise with respect to the amount of any claim for loss or damage by fire, and no fraud suspected, such difference shall be submitted to arbitrators indifferently chosen, whose award, or that of the umpire, shall be conclusive."

And—

(14) "It is further hereby expressed, provided, and mutually agreed that no suit or action against this company, for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or chancery until after an award shall have been obtained, fixing the amount of such claim in the manner above provided."

It has been urged that this stipulation is void as being against the policy of the law in that it withdraws the questions from the courts. I think the weight of authority is decidedly in favor of the conclusion that parties may legally by their own agreement refer the amount of damage under a contract to arbitrators, and by a proper covenant withdraw that one question from the courts. In *Scott* v. *Avery*, 5 H. of L. Cas. 811, this was decided in 1856, and that decision has been, so far as I can ascertain, acquiesced in both in Great Britain and in this country. The cases which seem to conflict with this case are those which were, or were thought to be, distinguishable from it. The doctrine there established has not been doubted. The cases to which I have been referred which were construed to be opposed to it are where there was no covenant not to sue until an award, but merely a covenant to refer. Those cases are in harmony with *Scott* v. *Avery*, as appears by the lucid statement of Baron Bramwell, in *Elliot* v. *Royal Exchange Assurance Co.* L. R. 2 Exch. (1866–1867) p. 245, and adopted by Lord Coleridge in *Dawson* v. *Fitzgerald*, 1 Law Rep. Ex. Div. (1875–1876) p. 260. That statement is as follows:

"If two persons, whether in the same or in a different deed from that which creates the liability, agree to refer the matter upon which the liability arises to arbitration, that agreement does not-take away the right of action. But if the original agreement is not simply to pay a sum of money, but that a sum of money shall be paid if something else happens, and that something else is that a third person shall settle the amount, then no cause of action arises until the third person has so assessed the sum."

The cases where an action will not lie, and the case where an action will lie, are here precisely distinguished. It is the negative words contained in the fourteenth stipulation, that no suit or action for the recovery of any claim by virtue of this policy shall be sustainable until after an award, which place this case in the latter class of cases. That this plea is, in law, good, is well settled by authority. Under our system of pleading we have no written statement responsive to the pleas of defendants, except where they amount to a reconventional demand. But the plaintiffs may give in evidence any matter in disproval or avoidance of the pleas, as if the practice of the courts allowed a responsive pleading and he had pleaded the same. The production of the policy by the plaintiffs maintains the substance of this plea, i. e., the covenant not to sue; the stipulation is contained therein as is averred. That being so, there could be but two facts which could have avoided this plea,—either that it had been waived by defendants, or that insured had offered to perform, i. e., had offered to arbitrate, and a refusal on the part of defendants. The plaintiffs have introduced no evidence tending to establish any fact in avoidance of the condition or covenant which the contract they sue upon contains.

The court having announced its conclusion that there was no evidence to be submitted to the jury, the plaintiffs submitted to a non-suit, which was accordingly entered.