# Baltimore and Susquehanna Railroad Company *versus* Musselman.

1. An act of union or consolidation of a defendant corporation with three other corporations under a law, which continued all its liabilities, was not such a dissolution of the corporation as abated an action commenced before the consolidation was effected.

2. A union of two corporations under an Act of Assembly, without any special provision to perpetuate their individual liability, is not equivalent to the death of either of them, nor can they discharge their liabilities in so summary a manner.

ERROR to the Court of Common Pleas of *York county*.

On the 6th of March, 1854, the passenger train from York to Baltimore, consisted of a locomotive, tender, baggage-car, and three passenger-cars. In passing around a curve (of 1042 feet radius, according to the measurement by *ordinates* of the plaintiffs' witness, and of 1450 feet radius as measured by angles by the defendant's witness, a civil engineer,) about two miles south of York, the first passenger-car left the track, and ran over the embankment, drawing after it the second passenger-car. The baggage-car in front of the first passenger-car, was thrown off the track, as were the hind wheels of the tender. The third passenger-car left the track, but did not go over the embankment. Abraham Musselman was in the first passenger-car, and was burnt, chiefly on the back and one arm. He was taken to Mr. Metzel's tavern, where he remained till the 23d of March, when he died. His nurse left him for an "armful of wood," and when he returned, Mr. Musselman was speechless, and died in a few minutes.

Two questions were submitted to the jury.

1. Whether Mr. Musselman's death was caused by injuries received at the overturning of the cars.

2. Whether, if his death was thus caused, the accident was the result of any degree of negligence on the part of the defendant or its agents.

The cause was committed to the jury, about five o'clock, P. M. They separated about midnight, and brought in next morning a sealed verdict for defendant. On being polled, one expressed his dissent from the verdict—and being sent back to their room, returned in about half an hour with a verdict for the plaintiff for $1000 damages.

On the 24th of March, before the jury was called, the following suggestion was read to the court, and filed.

"Mary Musselman, widow of Abraham Musselman, deceased, v. The Baltimore and Susquehanna Railroad Company, in the Common Pleas of York county, for August Term, 1854. No. 51.

"It is suggested by the counsel who originally appeared for defendant, that since this suit was brought, the defendant, in pursuance of the Act of General Assembly of the State of Pennsylvania, dated May 3, 1854, and of an Act of Assembly of the State of Maryland, dated March 10, 1854, became consolidated with and merged into a new company, called "The Northern Central Railway Company," composed of the said Baltimore and Susquehanna Railroad Company, the York and Maryland Line Railroad Company, the York and Cumberland Railroad Company, and the Susquehanna Railroad Company. That on or about the sixteenth day of December, 1854, such consolidation became complete, and the said defendant ceased to exist ; that the property of said company became vested in the said Northern Central Railway Company, which adopted and assumed all the contracts, engagements, and liabilities of said defendant, according to the terms and condition of the said Acts of Assembly, of May 3, 1854, and of March 10, 1854, that the deed and instrument, or articles of consolidation were then (16th of December, 1854,) duly recorded or placed on record as required by said acts. All which acts, instruments, and proceedings, *et cetera*, are now brought into court, whereby it is hereby alleged that the said corporation of the Baltimore and Susquehanna Railroad Company ceased to exist, and its corporate powers and franchises have ceased to exist.

"E. CHAPIN."

To the above suggestion the plaintiff's counsel filed the following answer.

"To the suggestion filed in this case by the counsel of the defendant, the plaintiff replies :—That the *tort* for recovering damages for which this suit is brought, was committed on the 6th day of March, 1854, that this suit was brought on the 9th day of August, 1854, that the declaration was filed on the 27th of November, 1854, and on the same day the defendant pleaded not guilty ; that the deed and instrument of consolidation of the several companies mentioned in the suggestion, were filed in the office of the Secretary of the Commonwealth, on the 16th of December, 1854, that on the 31st day of August, 1855, the plaintiff filed two additional counts in this suit, and on the 17th of November, 1855, the defendant pleaded *not guilty* to those additional counts ; that on the 12th of February, 1856, when this

cause was on the list for trial, it was continued at the instance of the defendant, on account of the absence of its witnesses; that by the act of General Assembly of the State of Pennsylvania, referred to in the suggestion, it was provided, 'that all existing contracts, engagements and liabilities of each of said companies, shall continue to bind them respectively, and their property and effects, as fully as before they shall have become consolidated into one company, or that such contracts, engagements and liabilities shall be duly adopted, and assumed by said consolidated company, in such manner, and to such extent, as shall be satisfactory to all parties having an interest in the same.' That it is not alleged in the suggestion, that the Northern Central Railway Company assumed the liability of the Baltimore and Susquehanna Railroad Company, upon which this suit is brought; that the plaintiff, who is one of the parties having an interest in the same, never was consulted in regard to such assumption by the Northern Central Railway Company, or consented to it if ever done, and is not, and never was, satisfied therewith. The plaintiff therefore says, that the defendant's counsel ought not to be admitted to make said suggestion or plea, because, 1st, it is in the nature of a plea in abatement, and should have been pleaded *puis darrein continuance,* and cannot be pleaded after the plea in bar on the 17th of November, 1855, because, 2d, it does not aver that the liability of the Baltimore and Susquehanna Railroad Company, for which this suit was brought, was adopted or assumed by the Northern Central Railway Company, and because, 3d, the liability for which this suit is brought, was not assumed or adopted by the Northern Central Railway Company, according to the provisions of the act of General Assembly, authorizing said consolidation."

The following point was submitted to the court, on behalf of the defendant: "That the corporation of the defendant, being merged in the Northern Central Railway Company, has become extinct, and the suit is thereby abated."

Upon this, the court, *inter alia,* charged the jury as follows:

"It is true, that the right of action is not reserved in express terms, but it is a fair construction to say, that the right of action exists by implication. There can be no right without a remedy, and therefore the necessity of implying one. But it is said, although the legislature took away the old remedy, they gave a new one by an action against the consolidated company. The words relied on for this view, are found in the second clause of the first general provision for consolidation, already cited; they are, '*or* that such contracts, engagements or liabilities, shall be duly adopted and assumed by the consolidated company, in such manner and to such extent as shall be satisfactory to all parties having an interest in the same.' The words,

[Baltimore and Susquehanna R. R. Co. v. Musselman.]

'*in such manner and to such extent as shall be satisfactory to all parties having an interest in the same,*" are not in the Maryland enactment. There must have been some reason for adding them to a clause, copied in other respects, from the Maryland statute; and that object, we think, was, to permit the consolidated company to assume the debts and liabilities of the several roads, if consented to by their creditors. We apply the words, "*having an interest in the same,*' not to persons having an interest in the consolidated company, but to persons having an interest in *all existing contracts, engagements, and liabilities of each of the said companies before consolidation.* We cannot suppose that the legislature of this State intended to unite these companies in such a manner as to turn their creditors for payment, without their consent, and against their will, to a corporation with whom they had not contracted.

"We think the creditors of the respective companies are the parties that are to be *satisfied,* and if they are not, then they have a remedy against their original debtors, and, to enable them to pursue it, we think the existence of the company is still continued, although all its other functions may have ceased. We therefore instruct you that this action has not abated."

Of which defendant complains and takes this writ of error.

*Chapin* and *Stevens,* for plaintiff in error.—The only question which we desire to raise in this case is, whether the extinction of the corporate powers of the defendant abates the suit. No case occurs to us, where a suit can proceed against a dead defendant. The legislature, no doubt, would be competent to authorize a suit to proceed notwithstanding the death of either plaintiff or defendant. But such authority must be given in *express terms;* and there is, it is believed, no such legislation as to dead corporations. It is not enough to say that the defendant or his estate shall be still responsible, notwithstanding his death. That would not affect the remedy. In cases of contract, where a natural person dies, it does not discharge the liability, but it requires the plaintiff to bring into court, living men, as his substitutes, who can defend.

The authorities say, such death of a corporation *abates the suit, ispso facto. May* v. *The State Bank of North Carolina,* 2 Rob. 66; *Rider* v. *Union Factory,* 7 Leigh, 154; *Greely* v. *Smith,* 3 Story, 657; *Farmers & Mechanics Bank* v. *Little,* 8 W. & S. 207; 1 Viner's Abr. 62; *Mumma* v. *The Potomac Company,* 8 Pet. 281; *Commercial Bank* v. *Lockwood,* 2 Harrington, 8.

The supreme power of the State, which created it, authorized its merger in a new company; it has been thus merged; its organization has ceased; its property, to the last farthing, has

been conveyed to the new company, as well as its "rights, privileges, advantages and immunities;" by permission of the same sovereign power, its stock has been surrendered and cancelled. Without officers, without property, without stock or stockholders, without a single corporate power, does it exist? That its corporate powers, for all purposes, are wholly gone, and merged in the Northern Central Railway Company, seems beyond doubt.

If judgment were recovered against the defendant, against whom would the execution issue? The company has ceased to exist. On what would it be levied? All the property has become the property of the Northern Central Railway Company. Could suit be brought by the Baltimore and Susquehanna Company, to recover debt? We suppose not, as its shortened existence was not prolonged *for any purpose*, by the laws consolidating the companies.

*Amwake*, *Potts*, *Campbell*, and *Weiser*, for defendant in error, cited *Farnum* v. *Blackstone Canal Company*, 1 Sumner, 61. There is no express intent in either of the acts of the two legislatures, to kill off the old company; but whether killed off or not, for other purposes, the legislatures of both States save the right of action, until at least certain things shall be done by the consolidated company, neither of which has been done. The liabilities of the old companies have not been assumed by the consolidated company, according to the terms and conditions of the Pennsylvania act, nor according to those of the Maryland act, nor have they been assumed by that company, at all.

The opinion of the court was delivered July 16, 1856, by

LOWRIE, J.—The learned judge of the Common Pleas was right in deciding that the act of union or consolidation of this corporation with three others, under a law which continued all its liabilities, was not such a dissolution of the corporation, as abated an action commenced before the consolidation was effected. The law says, that the liabilities shall continue, or be assumed by the consolidated company. If they were assumed, then the new company must attend to the suit, and answer the judgment, for that was one of the liabilities by which this corporation was bound; so, *quacunque via*, the suit does not abate. But, without any such provision as the above, in the law authorizing the consolidation, a court of justice would not consider the mere voluntary union of several corporations into one, as equivalent to the death of either of them; or attribute to the law-making power, an intention of enabling them to discharge their liabilities in such a summary way. It is not a case of death, for the new corporation lives from the life of the old one; their several lives are transferred into it; and unlike ordinary cases of metempsy-

chosis, this translation is accompanied by full consciousness of the former state, and its liabilities. If there has been a confusion of four lives into one, we leave, for another occasion, the decision, how far this one will be considered as assuming, or charged with, the duties of its several elements.

Judgment affirmed.