# Philadelphia Trust Company, Trustee, *v.* Northumberland County Traction Company et al.

# Pennsylvania Steel Company *v.* The Sunbury and Susquehanna Railway Company.

*Constitutional law—Impairment of obligation of contracts—Corporations—Street railway companies—Mortgages—Merger—Receivership—Remedies—Foreclosure of mortgaged property in hands of receiver—Public service company law—Acts of May 3, 1909, P. L. 408, and July 26, 1913, P. L. 1374.*

1. The constitutional provision, Federal and State, forbidding the impairment of the obligation of contracts lays its hand on the legislative department of the government, but the principle has like force when invoked for a similar purpose in the judicial department. There is no authority, common law or statutory, in the courts which empowers them to exercise functions expressly under the ban of the constitutional inhibition. Neither the courts nor the legislature can alter a bargain between contracting parties.

2. The clear terms of a mortgage contract cannot be altered or impaired by either the legislature or the courts, and this applies to the remedies or specific provisions for the enforcement of the contract as well as to the obligation to pay the bonded indebtedness.

3. The fact that the foreclosure of a mortgage of a street railway company, which was merged with other companies after the mortgage had been given, would be detrimental to the interests of the holders of the bonds of other constituent companies and of the merged company, would result in inconvenience to the public traveling on the merged railway by disconnecting the roads of the underlying companies, and that the road would sell for a better price as a whole, are not sufficient grounds for depriving the holders of bonds secured by the first mortgage of the right of proceeding under

the terms of that instrument to collect the amount due on their bonds.

4. Where street railway companies, which have given mortgages upon their properties, have been merged into one company, and the merged company is placed in the hands of receivers, indebtedness incurred by the receivers does not take precedence over the bonds secured by the underlying mortgages, if it appear that such indebtedness can be paid out of funds arising from the operation of the road by the receivers.

5. A receiver of an insolvent corporation stands in the shoes of the owner and takes only his interest in the property, subject to all valid liens against it; he can acquire no other greater or better interest than the debtor had in the property; he has the same right which the insolvent would have had and can set up no rights against claims which the debtor could not have set up. The appointment of a receiver for property does not affect preëxisting liens upon the property or vested rights or interests of third persons therein.

6. The Public Service Company Law of July 26, 1913, P. L. 1374, does not require the consent of the Public Service Commission before a mortgage trustee can foreclose a railroad company mortgage and sell the mortgaged property.

7. Certain street railway companies, having given mortgages to trustees to secure the issue of bonds, were merged so as to form a continuous line under the Act of May 3, 1909, P. L. 408, relating to the merger of railroad companies, and the consolidated company subsequently issued bonds secured by a mortgage upon the entire line. The consolidated company became insolvent and was placed in the hands of receivers. The mortgage trustee under one of the underlying mortgages was proceeding to foreclose such mortgage when the court, upon the application of the receivers, made an order directing the sale of the entire line of the consolidated company, free and clear of the liens of the underlying mortgages. *Held,* (1) that the remedies provided in the underlying mortgages for the foreclosure thereof by the respective mortgage trustees were part of the contracts; (2) that the obligation of such contracts was impaired by the decree of the lower court, and (3) that the lower court had no power to decree the sale of the entire line, free of the liens of the first mortgages, and the decree was modified so as to permit the trustees under the first mortgages to foreclose the same in accordance with the terms thereof.

Argued Jan. 5, 1917. Appeals, Nos. 272 and 273, Jan. T., 1916, by Philadelphia Trust Company, trustee, and No. 275, Jan. T., 1916, by Scranton Trust Company,

trustee, from decrees of C. P. Northumberland Co., Nos. 394 and 383, in equity, on bills in equity for the foreclosure of corporate mortgages, in cases of The Philadelphia Trust, Safe Deposit & Insurance Company (now Philadelphia Trust Company), Trustee, v. The Northumberland County Traction Company, Sunbury and Susquehanna Railway Company, and H. E. Davis, F. J. Byrod and Charles H. Grant, as receivers of Sunbury and Susquehanna Railway Company; and The Pennsylvania Steel Company v. Sunbury and Susquehanna Railway Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Bills in equity for the foreclosure of corporate mortgages. Before CUMMINGS, P. J.

From the record it appeared that the Northumberland County Traction Company, herein called "Traction Company," was formed in 1911 by the merger of two other companies, and owned and operated an electric railway from the Borough of Sunbury to the Borough of Northumberland, having a total length of about six miles. On November 1, 1911, it executed and delivered a first mortgage or deed of trust on all its property and franchises, then owned or thereafter to be acquired, to the Philadelphia Trust Company, as trustee, to secure an issue of its bonds, of which $400,000 are outstanding. The covenants bound the successors of the traction company which agreed that it would suffer no lien to have priority over this first mortgage, and waived all laws requiring foreclosure by an action or postponing the immediate sale of the mortgaged property under the provisions of the mortgage. It was provided that in case default should be made in payment of interest or principal of the bonds or in the performance of any other covenant by the traction company, the trustee, upon the written request of the holders of not less than one-half in amount of the outstanding bonds, should declare the principal

of all the bonds to be due and payable and enforce the rights and liens of the bondholders by foreclosure or sale of the mortgaged property, with the right of the purchaser at any sale of the property in execution of the provisions of the mortgage to apply the matured bonds and coupons upon the purchase-price.

The Sunbury and Selinsgrove Electric Street Railway Company, herein called "Selinsgrove Company" was incorporated in 1904 and owned and operated an electric railway from the Borough of Selinsgrove, in Snyder County, to the Borough of Sunbury, in Northumberland County, of about seven miles in length. On August 1, 1907, it executed and delivered a mortgage or deed of trust on all its property and franchises to The Scranton Trust Company, as trustee, to secure an issue of bonds to the amount of $300,000 which are now outstanding. This mortgage is a first lien on all of the property and franchises of the mortgagor, authorizes the trustee, on request of the holders of the majority of the bonds then outstanding upon which default in payment of interest or principal has been made, to take possession and operate the road until the debt is paid, to have the profits sequestered by a receiver appointed by a court of equity, to make public sale of the property, or to bring on a judicial sale, and stipulates that the rights and remedies of the holders of the bonds provided in the mortgage shall be exclusive of all others.

The Sunbury, Lewisburg and Milton Railway Company, herein called the "Lewisburg Company," owned and operated an electric railway in Northumberland Borough and Point Township, Northumberland County, having a total length of about two miles. On August 21, 1911, this company executed and delivered a mortgage or deed of trust on all its property and franchises to secure a bond issue of $1,000,000, of which $150,000 have been issued and are now outstanding.

The Chillisquaque Connecting Railway Company and the Montandon and Milton Railroad Company were in-

corporated as street railway companies under the laws of the Commonwealth, but have not constructed or operated roads under their charters.

The Sunbury and Susquehanna Railway Company, herein called the "Merged Company," is a corporation existing under the laws of the Commonwealth, and was formed in pursuance of the Act of May 3, 1909, P. L. 408, 5 Purd. 5703, by the consolidation and merger of all the above-named or constituted companies, and since the consolidation has owned 'and operated as a continuous and connected line the several lines of railway formerly owned and operated by those companies, having a total length of about sixteen miles. The merger agreement vested all the property and franchises of the five corporations in the new corporation, subject to all the debts, duties and liabilities of each of the constituent companies, and provided that all property and franchises afterwards acquired along each line should become a part of it and be primarily subject to the mortgage of the constituent company then operating that line, that all the rights of creditors and liens upon the property of either of the constituent corporations should be preserved unimpaired and those corporations should be deemed to continue in existence to preserve the same; and that all debts, liabilities and duties of either of the constituent companies should thenceforth attach to the merged corporation and be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it. The agreement also provided that a refunding mortgage should be created by the new corporation and should contain a clause that any default in respect to the payment of interest or any other provision contained in the refunding mortgage should be construed to be and should immediately operate as a default with respect to each of the three underlying mortgages of the constituent companies, so that thereupon immediately the respective trustees in the underlying mortgages, or the holders of the bonds of those

mortgages should forthwith make use of any remedy given in either or any of those mortgages for the enforcement of the provisions thereof with relation to default, as therein set forth, with like effect to all intents and purposes as if there had been a separate default under each of the underlying mortgages, and no payment of interest under any of the underlying mortgages should prevent such default, if any default whatever should be made with respect to any of the provisions of the refunding mortgage. The merged company created a bonded indebtedness of $200,000 which was secured by a mortgage on all of its property and franchises.

At the date of the merger, the lines of the traction company, the Selinsgrove company, and the Lewisburg company were end to end but did not physically connect, and after the merger the consolidated company physically connected the tracks of the three constituent companies and operated them as one line.

The Pennsylvania Steel Company filed a creditor's bill, on November 13, 1913, against the merged company, alleging insolvency, and on December 15, 1913, the court entered a decree adjudging the defendant to be insolvent and appointed three receivers who forthwith took possession of the street railway system of that company and have since operated it.

Default was made under each of the underlying mortgages of the three constituent companies and also the top mortgage of the merged company, but no bill for foreclosure was filed by the trustee under the Selinsgrove and Lewisburg companies mortgages.

The Philadelphia Trust Company, trustee under the traction company mortgage, presented its petition to the court below averring default on May 1, 1913, and thereafter, in payment of the interest due on the bonds issued by that company and secured by the mortgage; that on December 15, 1913, the court appointed receivers for the merged company who took possession of all its property, including the property on which the traction

company mortgage was a lien; and that petitioner had received the written request of more than one-half in amount of the holders of the outstanding bonds to declare the principal of all the bonds to be due and payable immediately and to proceed to enforce the rights and liens of the bondholders under the mortgage, and prayed for leave to file its bill for the foreclosure of the mortgage, naming as defendants in the bill the traction company and the receivers of the merged company. The prayer of the petition was granted on December 7, 1914, and on the same day the bill was filed.

On December 21, 1914, the receivers of the merged company presented a petition to the court below and obtained a rule to show cause why the court should not decree a sale of the corporate rights, franchises and property of that company by the receivers, freed and discharged from the lien and operation of the several mortgages of the constituent and merged companies, judgments, vendors' liens and paramount liens, specifically mentioned in the petition, and freed and discharged from the lien and operation of all other liens of any nature and character whatsoever. The petition alleged that a separate foreclosure and sale of the road covered by the traction company's mortgage, now asked for by the trustee under that mortgage, would work irreparable injury to the bondholders of the merged and other constituent companies, by causing the dismemberment of the system of railways operated as a unit by the receivers; that a separate foreclosure and sale of the traction company's road would be to the manifest injustice of creditors of all classes and that, as no bill had been filed to foreclose the mortgages of the other two constituent companies, the receivers would be left in the embarrassing position of trying to operate as a unit two pieces of disjoined and disconnected railway. The Philadelphia Trust Company, trustee under the traction company mortgage, filed an answer averring that the merger of the constituent companies could not impair, injure or affect the security

for the bonds as established by the traction company mortgage, and denying the materiality of the reasons assigned in the petition for an order for a receiver's sale of the property. The answer also avers that the court was without authority to grant the prayer of the petitioners for an order to sell. A committee of the bondholders of the traction company joined in the answer of the Philadelphia Trust Company. The Scranton Trust Company, trustee for the holders of the bonds secured by the mortgage of the Selinsgrove company, filed an answer in which it denied the material facts alleged in the receivers' petition, and also the jurisdiction of the court to order a sale of the properties as a whole, as prayed for, in the petition, divested of all liens, and particularly the lien of the mortgage of the Selinsgrove company. The answer also averred that the holders of the bonds would be deprived of the additional value of the property arising from the statutory right of the purchasers of the property to organize a corporation and to operate the property as a separate and independent street railway.

On January 4, 1915, the president and receivers of the merged company filed an answer to the bill of the Philadelphia Trust Company to foreclose the mortgage given by the traction company. The answer admits all the averments of the bill except that as to the request of more than one-half the bondholders, which was afterwards proved and found by the court, and avers that the receivers had applied to the court for leave to sell the property and franchises of the merged company, and it then sets forth the same reasons for objecting to the foreclosure of the traction company mortgage as are given in the receivers' application to the court for leave to sell the property and franchises of the merged company.

The cases were heard on the pleadings and testimony, and the court granted the prayer of the receivers' petition for an order to sell, and entered a decree authorizing them to sell, as an entirety, the corporate rights, franchises and property of the merged corporation and

of its constituent corporations at the date of the merger, divested of all liens by mortgage, judgment, decree or otherwise, upon the merged railway, whether before or subsequent to the merger and whether against the merged corporation or jointly or severally against its constituent corporations. The decree required a cash deposit of $10,000 by each bidder, and a cash payment of $100,000 on acceptance of any bid, and permitted the use of bonds in payment of the amount of the bid above the deposit and the down-money, and then allowed a credit for the bonds in "such sums as would be payable on such bonds and coupons out of the purchase-price, if the whole amount thereof had been paid in cash." From this decree the Philadelphia Trust Company, trustee, and a committee of bondholders of the traction company mortgage took an appeal, at No. 273, January Term, 1916, as did also the Scranton Trust Company, trustee under the Selinsgrove company mortgage, at No. 275, January Term, 1916. The court also entered a decree on the bill filed by the Philadelphia Trust Company, trustee, for the foreclosure of the traction company mortgage, that the mortgage was a valid and subsisting mortgage and constituted a first lien, with the exception of certain claims alleged to be preferential and then undergoing adjudication by the court, on that company's corporate rights, franchises and property covered thereby, and that there was default in payment of interest due on the mortgage whereby the principal of the mortgage was now due, but denied a separate sale in foreclosure, by the trustee under the traction company mortgage, and directed that the corporate rights, franchises and property covered by that mortgage be sold pursuant to the general order of sale issued under the court's decree to the receivers of the merged company. From this decree the Philadelphia Trust Company, trustee, appealed, at No. 272, January Term, 1916.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decrees of the court.

*C. LaRue Munson,* of *Candor & Munson,* with him *J. Simpson Kline* and *George S. Munson,* of *Townsend, Elliott & Munson,* for appellant.—The rights of the bondholders as creditors of the traction company were impaired by the refusal of the court to allow a foreclosure and sale of the property of the traction company: Galey v. Guffey, 248 Pa. 523.

The receivers could not legally be authorized to sell the property of the traction company divested of the plaintiff's first mortgage: Kuebler v. Haines, 229 Pa. 274; Lyons v. Benney, 230 Pa. 117; Lane v. Washington Hotel Co., 190 Pa. 230; Seventh National Bank of Philadelphia et al. v. Shenandoah Iron Co., 35 Fed. Repr. 436; Barclay v. Edlis Barber Supply Co., 39 Pa. Superior Ct. 482; Kneeland v. American Loan & Trust Co., 136 U. S. 89; Thomas v. Western Car Co., 149 U. S. 95; Bibber-White Co. v. White River Valley Electric R. R. Co. et al., 115 Fed. Repr. 786; Maryland Steel Co. v. Gettysburg Electric Ry. Co., 99 Fed. Repr. 150; Auten v. City Electric Street Ry. Co. et al., 104 Fed. Repr. 395; Chesapeake & Ohio Coal & Coke Co. v. Black, Sheridan & Wilson et al., 224 Fed. Repr. 924; Foster v. Barnes, 81 Pa. 377; In re Lebanon Brewing Co., 3 Pa. D. R. 260; Throckmorton's Ex'rs v. Lancaster & Southern St. Ry. Co., 33 Lanc. L. Rev. 233; s. c. 3 Penna. Corp. Rep. 606; s. c. 44 Pa. C. C. 569; Wabash, St. Louis & Pac. Ry. Co. v. Central Trust Co. of N. Y. et al., 22 Fed. Repr. 138; Commonwealth v. Susquehanna & Del. River R. R. Co., 122 Pa. 306; Fidelity Title & Trust Co. v. Schenley Park & Highlands Ry. Co., 189 Pa. 363.

The Public Service Company Law does not require the consent of the Public Service Commission before the plaintiff's mortgage can be foreclosed and a sale had thereunder.

*W. L. Hill,* of *Warren, Knapp, O'Malley & Hill,* for Scranton Trust Company, appellant.—The decree of the court deprives the bondholders of the Sunbury & Susquehanna Railway Company of rights guaranteed by the Constitution of the United States and by the Constitution of this Commonwealth: Galey v. Guffey, 248 Pa. 523.

*Ellis Ames Ballard,* with him *J. Fred Schaffer* and *Boyd Lee Spahr,* for appellee.—There is no impairment of the contract because the court directed a foreclosure of the mortgages: Fidelity Title & Trust Co. v. Schenley Park & Highlands Ry. Co., 189 Pa. 363; Old Colony Trust v. Allentown & Bethlehem Rapid Transit Co., 192 Pa. 596; Com. v. Susquehanna & Del. River R. R. Co., 122 Pa. 306; Philadelphia v. Elec. Traction Co., 208 Pa. 157; Hammock v. Farmers' Loan & Tr. Co., 105 U. S. 77; Vulcanite Paving Co. v. Philadelphia Rapid Transit Co., 220 Pa. 603.

The sale of the merged road in its entirety is not an impairment of the appellant's contract obligation: Union Canal Co. v. Gilfillin, 93 Pa. 95; Dalmas v. Philipsburg & Susquehanna Valley R. R. Co., 254 Pa. 9; Shepherd v. Pepper, 133 U. S. 626; Warner v. Grayson, 200 U. S. 257; Red River Valley Natl. Bank v. Craig, 181 U. S. 548; Farmers' Loan & Tr. Co. v. Cape Fear & Yadkin Valley R. R. Co., 82 Fed. Repr. 344; Low et al. v. Blackford et al., 87 Fed. Repr. 392; Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434; First Natl. Bank of Cleveland v. Shedd, 121 U. S. 74; Compton v. Jesup et al., 68 Fed. Repr. 263; Wheeling Bridge & Terminal Ry. Co. et al. v. Reymann Brewing Co., 90 Fed. Repr. 189; Dayton, Xenia & Belpre R. R. Co. et al. v. Lewton, 20 Ohio 401; Guaranty Tr. Co. v. Metropolitan St. Ry. Co., 168 Fed. Repr. 937; Gibert v. Washington City, Va. Midland & Great Southern R. R. Co., 74 Va. 586; Turtle Creek Boro. v. Penna. Water Co., 243 Pa. 401.

OPINION BY MR. JUSTICE MESTREZAT, May 14, 1917:

These three appeals are from two decrees of the Court of Common Pleas of Northumberland County, sitting in equity, and as the questions raised in all the appeals are practically identical they may be considered and disposed of in one opinion. The facts will be found in detail in the reporter's notes. They are principally of record and none of them, essential to the decision, is in dispute. The Sunbury and Susquehanna Railway Company, herein called the "Merged Company," was formed by an agreement, dated January 16, 1912, merging and consolidating the Northumberland County Traction Company, herein called "Traction Company," the Sunbury and Selinsgrove Electric Street Railway Company, herein called "Selinsgrove Company," the Sunbury, Lewisburg and Milton Railway Company, herein called "Lewisburg Company," and two other railway companies, the merger being made in pursuance of the Act of May 3, 1909, P. L. 408. Prior to the merger, the three specifically named constituent companies independently owned and operated street railways. They each secured an issue of first mortgage bonds by a mortgage or trust deed to a trustee on all the property and franchises then owned or thereafter to be acquired by them respectively, and the bonds are still outstanding and are due and unpaid. The merged company also secured a bond issued by a top mortgage and those bonds are outstanding and default in payment was made. On December 15, 1913, on a creditors' bill filed by the Pennsylvania Steel Company, the merged company was adjudged insolvent and receivers were appointed by the court below. Subsequently, the court declined to permit the Philadelphia Trust Company, trustee in the traction company mortgage, to foreclose its mortgage and sell the mortgaged premises, and granted the receivers an order to sell, as an entirety, the property and franchises of the merged corporation and its constituent corporations, divested of all liens against the consolidated and constituent companies.

From these decrees, the Philadelphia Trust Company and the Scranton Trust Company, trustees in two of the underlying mortgages, have taken appeals.

The principal and controlling questions in the appeals are substantially the same, and may be stated as follows: (1) Can a court of equity deny the trustee under the traction company mortgage the right upon default to foreclose and sell the mortgaged property; (2) Can the court decree a sale of the merged road as a unit by the receivers divested of the lien of the underlying mortgages of the constituent companies; (3) Does the Public Service Company Law require consent of its commission to foreclose the underlying traction company mortgage?

The learned judge of the court below refused to permit a separate foreclosure and sale under the traction company mortgage, and the reasons assigned are that it would work irreparable injury to the bondholders of the other constituent companies and the merged company, would be to the manifest injustice of all classes of creditors, would result in imposing additional burdens upon the traveling public and materially inconvenience the public travel upon the railway, would disconnect the roads of the other two constituent companies and compel the receivers to operate them as a unit without any means of connection, would greatly impair the value of the rolling stock which is used on the whole system, would prevent marshalling the assets as between the liens and preferential claims and between the units composing the merged company, and the road would sell for a better price as a whole than if sold in parts.

We are not convinced that these or any other reasons brought to our attention are sufficient, under the facts of these cases, to justify the court in refusing to permit the trustee under the traction company mortgage to enforce its rights and those of the bondholders acquired by and in accordance with the terms of the mortgage. This obligation was given to secure a bond issue and is the contract between the company and its creditors, the

holders of its bonds. The mortgage, in specific terms, imposes the obligation to pay the debt and interest of the bonds according to their tenor, and provides remedies, in case of a default in the performance of any covenant or stipulation of the contract, for enforcing the rights and liens of the bondholders. These remedies, as the mortgage discloses, are by a foreclosure or other appropriate proceeding, or by a sale of the mortgaged property by the trustee, and it is declared that "nothing herein contained shall be construed as abridging the power of the trustee to foreclose this indenture by bill in equity at any time after any default shall have been made and shall have continued as above provided." It is stipulated in the mortgage that, in any foreclosure or other sale of the property and franchises of the company in the execution of its provisions, the purchaser may use any of the matured and unpaid bonds and coupons toward payment of the purchase-price. It is conceded, and the court finds, that default was made in payment of interest on the bonds whereby the principal thereof had become due, and that the trustee had been requested to declare all the bonds due and payable and to proceed to enforce the rights and liens of the bondholders, as provided in the mortgage. The parties, therefore, not only stipulated in the mortgage for the payment of the bonds with their interest; but provided therein the remedies to enforce the payment of the indebtedness. The federal and state constitutions forbid the impairment of the obligation of contracts, and, as a mortgage is a contract, its terms are, therefore, inviolable. This inhibition extends to the remedy specified in the contract which becomes a part of the obligation and, without consent, cannot be altered, defeated or otherwise affected by subsequent legislation or by the judgment or decree of a judicial tribunal. This is settled on principle and authority, and of the numerous decisions in all jurisdictions enforcing the doctrine we need cite but two of our own cases. In Billmeyer v. Evans & Rodenbaugh, 40 Pa. 324, 327, Mr.

Justice WOODWARD, delivering the opinion, said: "A statute strictly remedial may impair the obligation of a contract, and when this happens the act is unconstitutional: Bronson v. Kinzie et al., 42 U. S. 311. This always happens where the parties make legal remedies a subject of their contract and subsequent legislation conflicts with what they have expressed in their agreement. If they do not prescribe the rule of remedy in their contract, the law making power is free; but if they do, they become a law to themselves, and the legislature must let them alone." In the subsequent case of Breitenbach v. Bush, 44 Pa. 313, the same learned judge, speaking for the court, restates the doctrine as follows (p. 318) : "It sometimes happens that the parties contract concerning the remedy—that they stipulate in the body of the contract that, in case of the failure of payment by a certain day, there shall be no stay of execution, or that the mortgagees may enter and sell the mortgaged estate—or that all exemption rights shall be waived. In such cases, the rule is that the remedy becomes a part of the obligation of the contract, and any subsequent statute which affects the remedy impairs the obligation, and is unconstitutional."

The constitutional provision, federal and state, forbidding the impairment of the obligation of contracts, lays its hand on the legislative department of the government, but the principle has like force when invoked for a similar purpose in the judicial department. There is no authority, common law or statutory, in the courts which empowers them to exercise functions expressly under the ban of the constitutional inhibition. In the language of Chief Justice BEASLEY in New Jersey Midland Ry. Co. v. Strait, 35 N. J. L. 322, 324, "neither the court nor the legislature can alter the bargain between these parties." We have distinctly so held in Galey v. Guffey, 248 Pa. 523, 528, where it is said: "It is true that what is prohibited is legislative action the effect of which would be the impairment of a contract; but what the

legislature may not do in this regard certainly the courts may not do. The power that is here denied the legislature was not reserved to the courts."

It is, therefore, clear that the terms of the mortgage contract cannot be altered or impaired by either the legislature or the courts, and this applies to the remedies, or specific provision for its enforcement, as well as to the obligation to pay the bonded indebtedness. The learned judge found that the traction company mortgage is a valid and subsisting mortgage and constitutes a first lien upon all the real and other estate, property and franchises of that company, with the right of the mortgagee, on default, to sell the mortgaged property, or foreclose the mortgage, and the right of the purchaser to use the bonds in payment of the purchase-price, but refused to permit the mortgagee trust company to enforce the lien and rights of the bondholders in accordance with the specific provisions of the mortgage contract. If, as said by Mr. Justice WOODWARD in the Billmeyer case, the courts may do this, the constitutional provisions are a vain parade of words, a mere theoretical rule without any practical force or value. This action of the court not only violated the contractual rights of the holders of the bonds secured by their mortgage but also the express provisions of the merger agreement, as well as the provisions of the Act of May 3, 1909, P. L. 408, under which the several constituent companies were consolidated. The merger contract provides, as will be observed, "that all the rights of creditors and all liens upon the property of either of the said corporations, parties hereto, shall be preserved unimpaired, and the said corporations may be deemed to continue in existence to preserve the same." This is the identical language of the third section of the Act of 1909, and, therefore, the rights and remedies conferred on the holders of the bonds under the traction company mortgage were protected and assured by agreement of the several constituent companies entering the merger, and by the express mandate of the statute au-

thorizing and legalizing the agreement which unified the several constituent systems of electric railways.

The effect of the decree refusing the trustee of the traction company mortgage the right to foreclose and sell under its mortgage is far-reaching, and deprives the bondholders of contractual rights essential to the full protection of their securities. It is conceded and was found by the court that default was made by the three constituent companies, and, hence, the principal and interest of the whole bond issue was due and unpaid at the time permission was asked to proceed on the traction company mortgage. By the terms of the decree, therefore, the traction company is barred from its equity of redemption in the mortgaged premises and the mortgagee is denied the right to foreclose the mortgage and to collect the indebtedness. This, as is apparent, is an important right possessed by the mortgagee, especially as the mortgage provides no other source from which the bonds can be paid. The decree also deprives the bondholders of the valuable right, in case of their being compelled to purchase the property to protect themselves, of applying the bonds in payment of the purchase-price, which is permitted, as provided in the mortgage, "in case any foreclosure or any other sale shall be made of the said property and franchises in execution of the provisions of this mortgage." The denial of the right to proceed on the mortgage take away this right, a right which unquestionably enhanced the value of the bonds. It is true, the decree of sale issued to the receivers permits the use of the bonds in payment of the purchase-price; but it requires a cash deposit of $10,000 by each bidder, and a cash payment of $100,000 on acceptance of the bid, and imposes other terms different from those provided in the merger agreement, which renders this contractual right practically valueless. The denial of a foreclosure and sale under the traction company mortgage also seriously affects the bondholding creditors, in that it deprives the purchasers of the property and franchises

of that company of the statutory right to organize a corporation and operate the property as an independent railway.

The reasons assigned by the learned court below for refusing to permit the trustee to make a separate sale in foreclosure of the mortgaged property, as will be observed, are, in effect, that it would be detrimental to the interests of the holders of the bonds of the other constituent companies and of the merged company, would result in inconvenience to public travel on the merged railway by disconnecting the roads of the underlying companies, and that the road as a whole would sell for a better price. These reasons are not sufficient to sustain the court's action. They entirely ignore and put aside the conceded rights of the traction company bondholders which are secured by their mortgage and of which all subsequent creditors had full notice. These creditors are not in a position to insist that their property interests and the convenience of the public will be endangered or sacrificed by a decree permitting the holders of the traction company bonds to enforce payment by availing themselves of the remedies granted them in the mortgage. Such a decree will violate no rights of those creditors, although their interests may be injuriously affected, and hence they cannot successfully invoke the aid of a court to defeat the prior rights of the traction company's creditors which are sought to be enforced in strict compliance with the company's contractual obligation. The language of the court in Pairpoint Mfg. Co. et al. v. Philadelphia Optical & Watch Co. et al., 161 Pa. 17, may well be applied here. In reversing a decree which enjoined a sale by the sheriff at the instance of the receivers of the defendant company, we said (p. 22): "The confession of judgment to the appellant being lawful, the only remaining reason presented by the petition for interfering with the writ of execution is that a sale can be more advantageously conducted in the interests of all the creditors by the receivers. This is not a sufficient reason. The

appellant is pursuing the regular and orderly course for the collection of a judgment lawfully obtained for a debt admittedly due. This is its right. The interests of other creditors may be affected thereby, but, until it is shown that their rights are violated, no one has a standing to challenge the appellant's right to use the means provided by law for the enforcement of its claim."

We do not agree that the so-called preferential claims take precedence of the bonds secured by the underlying mortgages. They are debts incurred by the receivers of the merged company, and hence were contracted subsequently to the then existing indebtedness created by the prior mortgages of the constituent companies. They can and doubtless will be paid out of the funds arising from the operation of the road by the receivers.

The learned chancellor held that the court had authority to decree the sale of the merged road as an entirety, by its receivers, freed and discharged of all liens, including the mortgages of the underlying companies. In considering this question, it is well to keep in view the fact that the parties objecting to the court's conclusion are the holders of the bonds of the underlying companies and not the holders of the bonds of the merged company. The reasons assigned for the court's conclusion are the same as those for refusing to permit a separate sale in foreclosure of the traction company mortgage, and that the jurisdiction of the court in equity having attached by virtue of the proceedings resulting in placing the merged road in the hands of receivers, the court had authority to give complete and adequate relief by decreeing a sale of the property discharged of all liens against the merged company and its constituent companies. The chancellor further suggested, as a reason for his action, that a separate sale in foreclosure of the traction company unit would interfere with the administration of the receivership, and consequently with the jurisdiction of the court to administer adequate relief

in the initial suit wherein the jurisdiction of the court first attached.

The statutory merger of the constituent companies, as already pointed out, did not affect the liens against those companies nor the rights of their creditors existing at the time of the merger, and the consolidated company took the property of the underlying companies with notice of and subject to such rights and liens. The merger agreement specifically protects the mortgage liens on the property of the constituent companies, and the Act of 1909 provides that they shall continue unimpaired after the consolidation. The underlying mortgages were first liens on the mortgaged property and franchises, as found by the court, and, "such being the fact, the bondholders are entitled to the money as against the company and all persons holding under it with notice of their position": Fidelity Ins., Trust & Safe Deposit Co. v. West Penna. & Shenango Connecting R. R. Co., 138 Pa. 494, 504. The effect of the statutory merger of corporations on the constituent companies is well expressed by Mr. Justice GRAY in the case of the Utica National Brewing Company, 154 N. Y. 268. The learned justice says (p. 273): "It is argued......that by the terms of the consolidation agreement the new corporation was freed from the debts and liabilities of the corporations merging into it. If we might assume that such was intended as a result of consolidation under the agreement, nevertheless it would be wholly inoperative to accomplish any such thing as to creditors who were not parties to the agreement. Such creditors were not bound by any of its provisions. The statute protected them, and consolidation pursuant to its permission and provisions, whatever it may mean for the stockholders because of their agreement, leaves the creditors precisely in the situation which the statute defines. If they have not done anything to impair or to release their rights, it is not, and could not be, within the purview of the statute that those rights may be impaired through the action of members of the consolidating cor-

porations." To the same effect are Baltimore & Susquehanna R. R. Co. v. Musselman, 2 Grant (Pa.) 348; Wabash, St. Louis & Pac. Ry. Co. v. Ham et al., 114 U. S. 587, 595; New Jersey Midland Ry. Co. v. Strait, 35 N. J. L. 322; Smith v. Los Angeles & Pac. Ry. Co., 98 Cal. 210; State, use of Dodson et al., v. Baltimore & Lehigh R. R. Co., 77 Md. 489.

The receivers were appointed on a creditors' bill filed on the equity side of the court by the Pennsylvania Steel Company against the merged company, averring the insolvency of the latter company and praying for the appointment of receivers to take possession of its property and franchises and operate its railway system. The effect of the receivership was to place the property of the merged company in the hands of the receivers to be administered for the benefit of the insolvent corporation. It did not and could not affect or impair the liens or contractual rights of the creditors of the merged company or of any of the constituent companies: Galey v. Guffey, 248 Pa. 523. A receiver of the insolvent corporation stands in the shoes of the owner and takes only his interest in the property subject to all valid liens against it. He can acquire no other greater or better interest than the debtor had in the property, and to this extent the receiver has been held to stand in the shoes of the debtor; and he has the same right which the insolvent would have had, and can set up no rights against claims which the debtor could not have set up: 34 Cyc. 191, and cases cited. The appointment of a receiver for property does not affect preëxisting liens upon the property, or vested rights or interests of third persons therein. A receiver, it is held, succeeds only to such right, title and interest in the property as the individual or corporation for which he is appointed receiver had at the time the appointment was made: 23 Amer. & Eng. Encyc. of Law (2d Ed.) 1091. "The appointment of a receiver," says Mr. Justice BREWER, delivering the opinion in Kneeland v. American Loan & Trust Co., 136 U. S. 89, 97, "vests in

the court no absolute control over the property, and no general authority to displace vested contract liens...... One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot........ We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens." This language is quoted with approval in Thomas v. Western Car Co., 149 U. S. 95, 111, and other federal decisions.

In view of the effect of the consolidation of the several constituent companies and of the appointment of receivers for the merged company, we cannot assent to the conclusion that the court appointing the receivers had jurisdiction to decree a sale of the merged road divested of the liens of the underlying mortgages. Its jurisdiction extended only to the administration of the assets of the insolvent merged company, and those assets, to the extent they had been the property of the underlying companies, were subject to the liens and contractual rights of the creditors of those companies which, by the contract and the statute, were "deemed to continue in existence to preserve the same." The constituent companies were not brought within the jurisdiction of the court by the appointment of receivers for the consolidated company. It was, therefore, clearly beyond the power of the court by its decree to divest the liens of the underlying companies. The creditors of these companies were not parties to the merger agreement and, so far as appears, could not prevent the consolidation. The bondholders of the respective underlying corporations and their mortgage trustees were not required to give their assent and did not agree to the merger of the corporations. The rights of the holders of the bonds and other creditors, are, as we have seen, expressly preserved

by the statute and the merger agreement executed by the constituent companies. If, as already pointed out, the court, in the administration of the assets of the merged corporation, were permitted to decree a sale by the receivers, divesting the liens of the mortgages of the underlying companies, it would be in plain violation of the contractual rights of the holders of the mortgage bonds protected by the federal and State constitutions. We repeat what is said above: What the legislature cannot do, the courts are without authority to do. The sacredness of a contract is protected by the fundamental law of the land and cannot be invaded by a court of law or equity.

A decree directing a sale by the receivers discharged of all liens and fixing the terms thereof, not only violates the contractual rights of the bondholders of the constituent companies, as pointed out above, but does them manifest injustice. The mortgage provides that, in case of a sale of the mortgaged property in execution of its provisions, the purchaser shall be entitled to apply the bonds in payment of the purchase-price. The decree orders a sale of the entire property of the consolidated company. If the bondholders of either of the constituent companies desire to protect their interests by purchasing the property, they must buy the three roads instead of one and, in accordance with the decree, deposit $10,000 as bidders, pay $100,000 on acceptance of the bid, and be permitted to use the bonds only in payment of the amount of the bid above the deposit and the down-money, and then be allowed a credit for the bonds only in "such sums as would be payable on such bonds and coupons out of the purchase-price, if the whole amount thereof had been paid in cash." The decree, therefore, imposes terms on the bondholders of the respective companies, if they become purchasers, which are violative of their contractual obligation and, in effect, compels them to purchase the three roads and thereby pay some part of the bonded indebtedness of the other companies.

The creditors of the merged company have no just ground to complain if a sale of the property to be made by the receivers is subject to the lien of the underlying mortgages: Woodworth v. Blair, 112 U. S. 8. The records which they were bound to consult gave them notice of the bonded indebtedness of the underlying companies and the remedies provided for its collection. The holders of the bonds of the merged company, therefore, knew that they were taking the top bonds subject to the contractual rights of the creditors evidenced by the terms of the underlying mortgages which made the bonds of the constituent companies first liens on the property and franchises of those companies and provided specific remedies for their collection.

The learned court below is clearly in error in holding that the Public Service Company Law requires the consent of its commission before the trustee could foreclose the traction company mortgage and sell the mortgaged property. This is not a proceeding instituted by the merged company or the traction company to sell, assign, transfer, lease, consolidate or merge its property, powers, franchises or privileges to or with any other corporation, which, under the Public Service Company Law, requires the approval of its commission, but is a bill in equity filed by the trustee to enforce the contractual rights of the bondholders by foreclosing the traction company mortgage by which the bond issue is secured. In other words, it is a proceeding by the trustee, in strict conformity with the contract, to collect the bonded indebtedness of the traction company, and there is no provision in the Public Service Company Law which attempts to or can interfere with or prevent it.

There are other questions of minor importance raised by the assignments, but they do not affect our conclusion and, therefore, need not be considered.

We conclude that the learned court below erred in refusing to permit the mortgagee in the traction company mortgage to enforce the rights of the holders of the bonds

under that mortgage by foreclosure and sale of the mortgaged property, one of the remedies stipulated in the contract of the parties, and in decreeing a sale of the merged roads as a unit divested of the lien of the underlying mortgages of the constituent companies.

It is ordered, adjudged and decreed that the appeals of the Philadelphia Trust Company, trustee, at Nos. 272 and 273, January Term, 1916, and of the Scranton Trust Company at No. 275, January Term, 1916, be sustained to the extent of modifying the decrees in the respective cases so as to conform to the views herein expressed, and a procedendo is awarded.

PER CURIAM, May 22, 1917:

And now, May 22, 1917, the decree in the above entitled cases is modified and enlarged as follows: In the case in which the appeal was taken to No. 272, January Term, 1916, the receivers of the Sunbury and Susquehanna Railway Company are directed to pay all the costs incurred since the filing of their answer, including the costs of the appeal; and in the cases in which the appeals were taken to Nos. 273 and 275, January Term, 1916, the receivers are directed to pay the costs incurred in connection with their petition for an order of sale, including the costs of the appeals.