## Stutzman's Assigned Estate.

*Residence—Intention—Voting as indication of.*

1. The question of residence is one of fact, to be determined from the acts as well as the declarations of the person concerned.

2. The exercise of the right to vote is strong evidence of intention as to residence.

*Assignee not bound by assignor's waiver of stay of execution — Act of Feb. 17, 1876.*

3. An assignee is not bound by the agreement of his assignor waiving stay of execution, but may, under the Act of Feb. 17, 1876, P. L. 4, secure a stay of execution against the assignor's property.

4. Where a contract is made after a statute becomes effective, the contract is subject to the provisions of the act.

5. Experience has shown that a sale by an assignee under the Act of Feb. 17, 1876, P. L. 4, will bring better prices than a sale by the sheriff, and for this reason an assignee's sale is preferred by the courts.

Petition for rule to show cause why an order of public sale should not be granted and execution stayed. C. P. Cambria Co., Dec. T., 1921.

*Frank P. Barnhart,* for petitioner; *Robert C. Hoerle,* for respondent.

EVANS, P. J., March 1, 1922.—In answer to the petition filed in this case, one of the lien creditors, the Union National Bank of Johnstown, set up (1) that W. S. Stutzman was not a resident of the State of Pennsylvania, and, therefore, not entitled to a stay of execution; (2) that the assignee had no right in law to have execution stayed; and (3) that it was not to the manifest interest of all parties that the assignee be permitted to make public sale of the assigned property.

From the testimony taken it appeared that the assignor had been living in the State of Ohio, together with his wife and family, since sometime during the year 1921, and that he had made various statements as to the advantages of living in the State of Ohio, in so far as the agricultural business was concerned. It further appeared, however, from the testimony of the assignor that the property upon which he had been living in Ohio was acquired in the name of his wife, for the purpose of having a farm for their boys; that he had no intention of changing his place of residence from Pennsylvania to the State of Ohio, but, on the contrary, in September of last year, he had sought to have himself placed upon the registration list, so that he would be able to vote at the fall election in Cambria County. This was at a time when there was no question whatever raised about his place of residence.

Considerable other testimony was taken, but, after considering it all, the act of the assignor in undertaking to exercise his right to vote in Cambria County indicates to us most strongly his intention to retain his place of residence in the State of Pennsylvania, and we, therefore, conclude that W. S. Stutzman, the assignor, was, at the time of the assignment, and is now, a resident of the State of Pennsylvania.

As to the second question raised, to the effect that there is no right in law upon the part of the assignee to ask for a stay of execution, the respondent relies upon the case of Strawn, Trustee, *v.* Iams, 247 Pa. 132, contending that, under this decision, the assignee simply stands in the shoes of the assignor, and is not in position to raise the question of waiver of the right of execution contained in the instrument upon which the respondent's judgment was entered. We have examined this case with care, and are not able to reach the conclusion of the learned counsel for the respondent. The question which we have in the present case was not raised in that case.

The Act of Feb. 17, 1876, P. L. 4, provides that in all assignments for the benefit of creditors it shall and may be lawful for the several Courts of Common Pleas of this Commonwealth, on application of the assignee of insolvent debtors, setting forth that the personal estate is insufficient for the payment of debts, and the real estate encumbered with liens to such an extent as to render it difficult to determine whether the same can be sold for enough to pay all the liens, to grant an order, where the said court shall deem it for the manifest interest of all parties, authorizing and empowering the said assignees to make public sale of such real estate, or so much thereof as may be deemed necessary, at such place and upon such terms as the said court shall direct, which sale or sales, after being confirmed by the said court, shall discharge all liens against the real estate so sold, excepting that where the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents and the purchase money due the Commonwealth, the lien of such mortgages shall not be destroyed or in any way affected, etc.

Following this act, there was raised the question that the debtor having waived the right of stay of execution in the contract with his creditor, his assignee could not have this contract set aside and that there could be no stay.

In the case of Pauley's Estate, 149 Pa. 196, Mr. Justice Green, in writing the opinion of the court, among other things, said: "That act (Feb. 17, 1876) was necessarily applicable to all cases arising after its passage, and when the appellant obtained her judgment, she knew that it was subject to the operation of the Act of 1876, and that under that act, if her judgment debtor made an assignment for the benefit of his creditors, it was within the power of the Court of Common Pleas to grant an order of sale to the assignee in the circumstances mentioned in the act, and as a part of the order to direct a stay of execution on all liens that might be divested by the sale. The appellant is not in condition to say that the Act of 1876 made any change in her contract rights, precisely as they were at the time she obtained her judgment. It is true that the Act of 1876 does not specifically say that in cases where stay of execution was waived in the contract the court might order a stay, but the language is so general and comprehensive that it embraces all liens of whatever kind that may be divested by the sale. The appellant's judgment is such a lien, and it is, therefore, embraced within the terms of that act. We have no difficulty in holding that, so far as this matter is concerned, the appellant's contention cannot be sustained." We believe that the decision in the case of Strawn, Trustee, v. Iams, 247 Pa. 132, in no way conflicts with this decision.

In the present case it is conceded that while the judgment of the Union National Bank, upon which the execution is issued, is entered upon a bond accompanying the mortgage, that mortgage does not represent a first mortgage upon the property, nor come within the exceptions of the act, but that its lien may be divested by sale by the assignee.

There is sometimes some confusion about the effect of the decision of the Supreme Court in the case of Galey v. Guffey, 248 Pa. 523, and the case of Philadelphia Trust Co., Trustee, v. Northumberland County Traction Co., 258 Pa. 152, but all that is decided in the two cases above referred to is that a court of equity has no power to restrain the secured creditors of an individual whose estate has been placed in the hands of a receiver from adopting and following such legal remedies as are allowed them by the terms of their contract, and at such times as that contract, by its terms, permit. These

decisions are in no way in conflict with the case of Pauley's Estate, 149 Pa. 196, and simply reaffirm the decision made more than once, to the effect that neither the legislature nor the court may impair the obligation of a contract, but where the contract is made subject to the provisions of an act of legislature, that, as is held in the case of Pauley's Estate, 149 Pa. 196, is not an impairment of the obligation of the contract. The parties, when they wrote their contract, knew the limitations of their right to contract as provided in the act of assembly, and the contract, made after the act of the legislature has become a law, is subject to the provisions of that law.

We are, therefore, of the opinion that the assignee has the right to petition the court in the present case for leave to sell the assigned property at public sale, and to have execution stayed upon all liens, except those specifically excepted in the act, and that the lien of the respondent is not in the excepted class.

As to the third contention, that it was not for the manifest interest of all parties that a sale be made by the assignee rather than a sheriff's sale, we have considered this matter very carefully. There is a large amount of indebtedness and a number of creditors, and it is difficult to determine whether the property can be sold for enough to pay all the liens. Therefore, it is extremely important that the sale be made in such a way as to bring the largest amount of money for the property. We appreciate the position of the respondent bank in its endeavor to promptly and quickly have the real estate sold by the sheriff, but we are obliged to consider not only the interest of this particular lien creditor, but of all of the lien creditors and the interest of all the parties concerned. In this connection, we might say that it is our general observation that property sold by the sheriff, as a general rule, brings but a small part of its actual value, and that sales by an assignee usually bring much nearer the real value of the property than a sheriff's sale. The assignee has an opportunity to divide the real estate into smaller parts, seek purchasers by his individual effort, and to use special means of attracting the attention of the public and probable purchasers to the land to be sold, resulting, as a general rule, in a very much greater price being realized for the property than is obtained at a sheriff's sale. In addition to this, we do not recall a single instance in the past twenty years, when an assignee made application under the Act of 1876 under circumstances similar, or nearly similar, to the present case, where the court did not see fit to permit the sale by the assignee and to stay executions.

Under all the facts as we consider them in this case, we feel that it is to the manifest interest of all the parties that the assignee be permitted to make sale of the real estate of the assignee's estate, and that execution be stayed upon all liens which may be stayed under the provisions of the Act of Feb. 17, 1876. We, therefore, enter the following decree:

And now, March 1, 1922, the petition in the above stated case having been read and considered, the court being satisfied that due notice has been given to the creditors entitled to notice that such application would be made, and after hearing and investigation, deeming it for the manifest interest of the parties concerned, authorizes and empowers the assignee of W. S. Stutzman to make sale of the real estate described in the petition, in such parts and parcels and at such place or places as may seem to him to be to the best interest of all persons concerned, and to make such sale discharged of liens. In the event of a public sale of all or any part of such premises, it shall be sold upon the following terms: One-third of the purchase money to be paid in cash and the balance in two equal payments at six and twelve months

respectively, with interest on deferred payments, to be secured by bond and mortgage upon the portion of the premises sold to the particular purchaser, and in case of private sales, payments to be made on the same terms.

Due notice of any public sale shall be given in accordance with the provisions of the act of assembly, and if any private sales be made, notice in accordance with the act of assembly shall be given.

All executions and other final processes against the said real estate shall be stayed in the meantime.

From H. W. Storey, Jr., Johnstown, Pa.